UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| BODOR LABORATORIES, INC. and NICHOLAS S. BODOR, <br><br> Plaintiffs, <br><br> v. <br><br> BRICKELL SUBSIDIARY, INC. f/k/a BRICKELL BIOTECH, INC., <br><br> Defendant. | ) ) ) ) ) Case No. 1:19-cv-24379 (PCH) ) ) ) ) ) ) ) ) |

**DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT OR TO STAY THIS ACTION PENDING MANDATORY ARBITRATION**

Pursuant to 9 U.S.C. § 2, Fed. R. Civ. P. 12(b)(1), and S.D. Fla. L.R. 7.1, Defendant Brickell Biotech, Inc. ("Brickell") seeks an order dismissing the complaint filed by plaintiffs Bodor Laboratories, Inc. ("Bodor Labs") and Nicholas S. Bodor ("Dr. Bodor") (collectively, "Plaintiffs" or "Bodor"), in deference to the parties' agreement to resolve any disputes by binding arbitration.[1] Alternatively, this Court should stay this action pending resolution of a pending AAA arbitration.

---

[1] Brickell files this motion for the limited purpose of seeking the dismissal and/or stay of this action pending final arbitration. Courts in the Eleventh Circuit "treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1)." *MRI Scan Ctr., LLC v. Nat'l Imaging Assocs., Inc.*, 2013 WL 1899689, at *2 (S.D. Fla. May 7, 2013); *see Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *2 n. 3 (S.D. Fla. Mar. 7, 2013). Brickell, which has not been served, is not at this time raising any arguments under Rule 12(b)(6) and reserves the right to raise such arguments as may be appropriate in the event the Court denies this motion. Further, nothing in this motion is intended to waive Brickell's right to arbitrate the claims asserted in Plaintiffs' complaint as required by the parties' License, as discussed further below.

## PRELIMINARY STATEMENT

Brickell is a clinical-stage pharmaceutical company focused on developing treatments for skin diseases. Bodor Labs, founded by Dr. Bodor, is a company that engages in drug invention and design. (Dkt. No. 1 ("Compl.") at ¶ 7.) Brickell and Bodor are parties to a License Agreement effective as of December 15, 2012, as amended (the "License" or "Agreement"). (Compl. Ex. A.) In that License, Bodor granted Brickell a worldwide, exclusive, royalty-bearing, sublicensable license under certain patents and other intellectual property related to sofpironium bromide to develop a drug approved by the U.S. Food & Drug Administration ("FDA") and other global regulators to treat hyperhidrosis (excessive sweating).

Brickell has been making tremendous progress at its own cost and financial risk to develop this new product that can serve a critical unmet need for patients. Brickell has completed a successful Phase 2b trial in the U.S. demonstrating that sofpironium bromide was well-tolerated and achieved statistically significant efficacy results in 227 adult patients with axillary hyperhidrosis. Brickell initiated a long-term safety study in September 2018 and is on the cusp of commencing the pivotal Phase 3 program this quarter.

Brickell also has entered into a sublicense agreement with Kaken Pharmaceutical Co., Ltd. ("Kaken"), a Japanese company, to develop sofpironium bromide for use in Japan and other Asian countries. The Kaken sublicense was initially entered into on March 31, 2015 and has been amended several times since then. (*See* Compl. Ex. B.)

All of these successes are the result of Brickell's hard work, which has come at

considerable expense. Notwithstanding these successes, and notwithstanding that the pivotal Phase 3 U.S. trial was about to begin, on October 23, 2019, Bodor purported to immediately terminate the License. In its "termination" letter, Bodor wrote that it was doing so "because of (a) the patent challenge you have initiated by the filing of a baseless provisional patent application that was wrongly claimed to be the independent work of Brickell and/or Kaken … and (b) your material breaches to the License agreement and your false dealings with Kaken, which have wrongfully deprived Bodor of millions of dollars in royalties and milestone payments." (Compl. Ex. D.) Bodor later that day filed this lawsuit.

As Brickell will demonstrate in its pending arbitration against Bodor (Ex. 1), that "termination" letter was null, void, and delivered in bad faith. Bodor knows that Brickell has not initiated any "patent challenge" to any of Bodor's patents. The provisional patent application about which Bodor complains—which Brickell provided to Bodor as confidential information under the License—does not purport to seek a decision from any tribunal or authority that any Bodor patent is invalid.

Bodor also knows that Bodor has not been deprived of any moneys to which Bodor is contractually entitled. Bodor complains that, as a result of amendments to the sublicense, a potential future milestone payment was replaced by a research & development ("R&D") payment that helped Brickell fund its development efforts for sofpironium bromide. But the License expressly *excludes* from any payment obligations to Bodor funds paid to Brickell exclusively for R&D purposes. And nothing in the License prohibited Brickell and Kaken from amending the terms of their

—3—

sublicense.

Demonstrating its bad faith, Bodor attached to the complaint a letter dated July 26, 2019 in which Bodor purported to raise certain issues and request certain payments related to the License. Bodor did *not* tell the Court that Bodor affirmatively withdrew that letter on July 30, 2019. (*See* Ex. 2.) Thus, at the time of its "termination" letter and lawsuit, Bodor had not given Brickell written notice of any pending dispute related to the License.

As relevant to the issue presented in this motion, Bodor has not sought to resolve its disagreements with Brickell under the dispute resolution procedure required by Section 9.2 of the License—final, binding and conclusive arbitration conducted in Miami-Dade County pursuant to the American Arbitration Association ("AAA") Commercial Arbitration Rules:

> 9.2 Disputes. Subject to Sections 9.1 and 9.4, should mediation be unsuccessful, *the Parties agree that all disputes, controversies or differences which may arise between them or for the breach of any of the terms hereof shall be referred to and settled by arbitration* in accordance with the Rules of the American Arbitration Association ("Rules") as currently in force by one or more arbitrators appointed under such Rules. Such arbitration hereunder shall be conducted in the English language and shall be held in Miami-Dade County, Florida. *The determination of the arbitration shall be final, binding and conclusive upon the Parties hereto.* Notwithstanding anything herein to the contrary, the relevant cure periods for breach under this Agreement shall be suspended while either Party pursues resolution to a dispute through arbitration.

(Compl. Ex. A, § 9.2 (emphases added).)

Consistent with its adherence at all times to the express language of the License, Brickell has commenced a AAA arbitration against Bodor for the patently

deficient "termination" letter and the damage caused by Bodor to Brickell. (Ex. 1.)

Because the parties agreed that "*all* disputes" between them must be resolved "in a final, binding and conclusive" arbitration, Plaintiffs' complaint should be dismissed or, alternatively, the Court should stay this action pending completion of the already-commenced arbitration.

## LEGAL STANDARD

The Federal Arbitration Act ("FAA") "requires a court to either stay or dismiss a lawsuit and to compel arbitration upon a showing that (a) the plaintiff entered into a written arbitration agreement that is enforceable "under ordinary state-law" contract principles and (b) the claims before the court fall within the scope of that agreement." *Lambert v. Austin Ind.*, 544 F.3d 1192, 1195 (11th Cir. 2008) (citing 9 U.S.C. §§ 2–4) (quoting *Paladino v. Avnet Computer Techs., Inc.*, 134 F.3d 1054, 1061 (11th Cir. 1998)). Conversely, a party seeking to avoid arbitration must prove that the agreement to arbitrate was waived. *Ivax Corp. v. B. Braun of Am., Inc.*, 286 F.3d 1309, 1315 (11th Cir. 2002). Any "ambiguities as to the scope of the arbitration clause itself [are] resolved in favor of arbitration." *Tookenay v. Santander Consumer USA, Inc.*, 2012 WL 3245343, at *2 (S.D. Fla. Aug. 9, 2012) (quoting *Volt Info. Scis., Inc. v. Bd. of Trustees of Leland Stanford Junior Univ.*, 489 U.S. 468, 476 (1989)).

When all claims at issue in a case are subject to arbitration, dismissal is appropriate. *See, e.g., Abellard v. Wells Fargo Bank, N.A.*, 2019 WL 2106389, at *4 (S.D. Fla. May 14, 2019) ("[W]here the Court compels arbitration of all of the claims involved, the Court sees no benefit to a stay, as opposed to dismissal."); *Perera v. H&R Block Enters., Inc.*, 914 F. Supp. 2d 1284, 1290 (S.D. Fla. 2012) (collecting cases). In

the alternative, a court may stay a case pending arbitration per Section 3 of the FAA, 9 U.S.C. § 3. And whether a court dismisses or stays the case, the FAA "mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

## ARGUMENT

**I.  Brickell and Bodor Have an Enforceable Arbitration Agreement.**

There is no question that the parties entered into a valid and enforceable arbitration agreement. Under Florida law, "the plain meaning of the contract's language controls interpretation of the contract." *Viamonte v. Biohealth Techs., Inc.*, 2009 WL 4250578, at *3 (S.D. Fla. Nov. 25, 2009) (quoting *Belize Telecom, Ltd. v. Government of Belize*, 528 F.3d 1298, 1306 (11th Cir. 2008)). This requires courts to give words "their natural meaning or the meaning most commonly preferred to one that is unreasonable." *Termaforoosh v. Wash*, 952 So.2d 1247, 1249 (Fla. 5th DCA 2007) (citing *Thompson v. C.H.B., Inc.*, 454 So.2d 55, 57 (Fla. 4th DCA 1984)). "In interpreting an arbitration clause, 'as with any other contract, the parties' intentions control, but those intentions are generously construed as to issues of arbitrability.'" *Jensen v. Rice*, 809 So. 2d 895, 899 (Fla. 3d DCA 2002) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985)).

Article 9 of the Agreement unambiguously provides:

> 9.2 Disputes. Subject to Sections 9.1 and 9.4, should mediation be unsuccessful, *the Parties agree that all disputes, controversies or differences which may arise between them or for the breach of any of the terms hereof shall be referred to and settled by arbitration* in accordance with the Rules of the American Arbitration Association ("Rules") as

> currently in force by one or more arbitrators appointed under such Rules. Such arbitration hereunder shall be conducted in the English language and shall be held in Miami-Dade County, Florida. *The determination of the arbitration shall be final, binding and conclusive upon the Parties hereto.* Notwithstanding anything herein to the contrary, the relevant cure periods for breach under this Agreement shall be suspended while either Party pursues resolution to a dispute through arbitration.

(Compl. Ex. A, § 9.2 (emphases added).)[2]

As the intent of the parties in the License Agreement is clear that *any* dispute among them, let alone any disputes arising out of the Agreement, must be resolved in arbitration, any contrary interpretation would disregard the plain meaning of the Agreement in contravention of Florida contract law. *See, e.g., Viamonte*, 2009 WL 4250578, at *4 (affirming motion to compel arbitration when plain meaning of the contract required arbitration).

It also makes no difference that Bodor has purported to terminate the License. "Arbitration provisions are to be construed to require arbitration of disputes arising after the cancellation of the underlying contract unless such disputes are specifically excluded from arbitration." *Auchter v. Zagloul*, 949 So.2d 1189, 1194 (Fla. 1st DCA 2007); *accord Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526, at *5 (S.D. Fla. Mar. 7, 2013) (granting motion to compel arbitration despite the plaintiff's

---

[2] Under the License, informal dispute resolution followed by mediation is supposed to be a precursor to the initiation of formal legal proceedings. (Compl. Ex. A, § 9.1.) Bodor has violated this aspect of the License with its complaint. But for present purposes, all that matters is that "issues of procedural arbitrability, including conditions precedent to arbitration, are for arbitrators to decide." *Dimattina Holdings, LLC v. Steri-Clean, Inc.*, 195 F. Supp. 3d 1285, 1289 (S.D. Fla. 2016) (citing *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1107, 1109 (11th Cir. 2004)).

assertion that he terminated the agreement because the agreement expressly provided that it survived termination). Here, leaving aside that Bodor's notice of termination was improper, the License provides that Article 9, which includes the agreement to arbitrate, survives termination. (Compl. Ex. A, § 4.4.)

## II. Bodor's Claims Are Within the Scope of the Arbitration Agreement.

The Bodor claims clearly fit within the scope of the arbitration clause. The parties' agreement to arbitrate is broad—"*all* disputes, controversies or differences which may arise between them or for the breach of *any* of the terms [of the License]." (Compl. Ex. A, § 9.2 (emphases added).) And the Eleventh Circuit reads the words "any" and "all" in an arbitration agreement broadly. *See, e.g., Viamonte,* 2009 WL 4250578, at \*4 (citing *Gregory v. Electro-Mechanical Corp.*, 83 F.3d 382, 385–86 (11th Cir. 1996)); *Olsher Metals Corp. v. Olsher*, 2003 WL 25600635, at \*5 (S.D. Fla. Mar. 26, 2003), *aff'd*, 90 F. App'x 383 (11th Cir. 2003) (collecting cases).

Bodor cannot end-run the mandatory arbitration provision of the License Agreement by seeking a declaratory judgment or a permanent injunction. The complaint makes clear that Bodor wants this Court to interpret the License and determine whether any party has violated it. The parties agreed that this was the responsibility of an arbitrator, not the Court. Indeed, the parties agreed that *any* disputes between them should be resolved on the merits in final, binding and conclusive arbitration. Bodor's request in its complaint for an injunction seeking to cease and desist Brickell's use of its intellectual property is both a dispute between the parties and inextricably bound up with whether Brickell initiated a patent challenge or has materially breached the License. (As will be demonstrated in the

—8—

arbitration, Brickell has done neither.) As such, it falls within the scope of the arbitration agreement.

Finally, the complaint demonstrates that Bodor is not seeking "a preliminary injunction or other provisional equitable relief … to avoid irreparable harm to itself or to preserve its rights under the Agreement." (Compl. Ex. A, § 9.4.) Bodor seeks a permanent injunction and a final declaratory judgment, not any provisional relief. Any purported contention of irreparable harm justifying a *provisional* or *preliminary* injunction would ring hollow when the complaint filed at the end of October alleges that all of the facts about which Bodor complains were known to it no later than the end of July, and in most cases months, if not years, earlier. (*See, e.g.*, Compl. ¶¶ 16, 28, 36, 40.) In short, Bodor has filed the lawsuit to avoid its obligation to arbitrate, not to preserve any right under the Agreement.

### III.  This Court Should Dismiss This Action.

As noted above, "the weight of authority clearly supports dismissal of the case when all of the issues raised in the district court must be submitted to arbitration." *Perera*, 914 F. Supp. 2d at 1290. Bodor's contrived argument about alleged infringement of its intellectual property does not alter the analysis. That argument is a dispute between the parties that must be arbitrated under the parties' agreed-upon, broad arbitration clause. Further, whether or not Brickell is infringing on Bodor's intellectual property turns on whether or not Bodor has properly terminated the License. That, too, is an issue that the pending AAA arbitration will resolve. Accordingly, this Court should dismiss this case.

At a minimum, this Court should stay this action pending resolution of the

pending AAA arbitration, which invokes the dispute resolution provision mechanism to which the parties expressly agreed, and which will resolve whether there is any merit to Bodor's claims, or whether, instead, Bodor has itself materially breached the License and substantially damaged Brickell by filing a baseless "termination" notice.

## CONCLUSION

Bodor's action asks this Court to address issues that the parties unambiguously committed exclusively to binding, final and conclusive arbitration. This Court accordingly should dismiss this action in lieu of arbitration. In the alternative, this Court should stay the action pending completion of the pending AAA arbitration.

Respectfully Submitted,

*/s/ Alan D. Lash*

Alan D. Lash (FBN 510904)
LASH & GOLDBERG LLP
Miami Tower
100 Southeast 2nd St. Suite 1200
Miami, FL 33131-2158
Tel:   305.347.4040
Fax:   305.347.4050
alash@lashgoldberg.com

Benjamin C. Block (*pro hac vice* pending*)*
COVINGTON & BURLING LLP
One CityCenter
850 Tenth St., N.W.
Washington, D.C. 20001
Tel:   202.662.5205
Fax:   202.778.5205
bblock@cov.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2019, I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Southern District of Florida by using the CM/ECF system, which sent notification of such filing to all CM/ECF participants.

*/s/ Alan D. Lash*
